LOUISE FAIVRE, Appellee, v. JOHN MANDERCHEID AND JOHN ARNESDORF, Appellants.

Damages from Sale of Liquor: INJURIES OF HUSBAND MAY BE EX-HIBITED TO JURY: In an action by a wife for damages for selling intoxicating liquor to her husband, where it appeared that, by reason of intoxication resulting from such sale, the husband's hands and feet had been frozen so as to necessitate partial amputation, there was no error in allowing the husband to exhibit his hands and feet to the jury, for the purpose of showing the extent of his injury, and thus the degree to which his earning capacity had been impaired.

*And photographs of his crippled condition.* Where, in an action by a wife for damages for selling liquor to her husband, the husband's physical condition was shown to the jury by personal view of his injuries, the admission of photographs of the husband, showing his crippled condition, was not reversible error.

INJURY FROM A PARTICULAR INTOXICATION: *Contributors not acting in concert.* Where a wife claimed damages resulting from a particular intoxication of her husband, and not from a general besotted condition, a joint action would lie against the several parties who contributed to the particular intoxication, though they were conducting separate places of business when the liquor was sold the husband, and did not act in concert.

Granting Change of Venue: DISCRETION NOT REVIEWED. Where, after two trials of an action for damages for selling intoxicating liquor to plaintiff's husband, each resulting in a disagreement of the jury, motion was made for change of venue on the ground of local prejudice against such actions, and the local influence of defendants and their counsel, and the court, after considering affidavits on both sides, granted the motion, it appearing that plaintiff established a *prima facie* cause for change, the court's exercise of its discretion in granting it would not be reviewed, regardless of the number of affidavits submitted on each side.

INFORMAL PERFECTING OF CHANGE: *Does not affect jurisdiction.* Under Code, section 3500, providing that, when a change of venue is granted, it must be perfected by noon of the second

day thereafter, and that when perfected the clerk must forth-
with transmit to the clerk of court.to which the cause is sent a
transcript of the record, with all the original papers, having
first filed in his own office authenticated copies thereof, failure
of a clerk to transmit part of the record, consisting of the mo-
tion for the change of venue, and the objections thereto, and
the affidavits on both sides, until the fourth day after the
change was granted, did not deprive the court to which the
cause was sent of jurisdiction to try it; such defects and infor-
malities being subject to amendment if deemed material.

*Same: What is a filing.*    Failure of the clerk of a court to which
a cause was transmitted upon motion for change of venue to
make a written minute entry of the filing of the record trans-
cript at the date of its receipt did not deprive the court of jur-
isdiction to try the cause, since the actual receipt of the papers
by the clerk was, to all intents and purposes, a filing, and the
omission of the minute entry could be cured by order of the
court.

SAME:   *Failure to make timely payment of costs of change.*   Un-
der Code, section 3511, providing that all costs caused by a
change of venue shall be paid by applicant, that the court or
judge at the time of making the order for such change shall desig-
nate such costs, and that no change shall be held perfected un-
til the same are paid, where the court, in ordering a change
failed to designate any costs, and the applicant paid the clerk's
costs as soon as the clerk would say what they were, and would
accept them, applicant's failure to pay costs within the time
allowed by section 3500 (till noon of the second day thereafter)
to perfect a change of venue did not deprive the court to which
the cause was sent of jurisdiction to try it.

Review on Appeal:   PREPONDERANCE.    Where the evidence is con-
flicting, but there is sufficient testimony, if credited, to sustain
the verdict, the appellate court cannot disturb the verdict,
though there was a preponderance in number of witnesses
against the prevailing party.

ASSIGNMENT OF ERRORS:    *On instructions.*    Under Code, section
4136, requiring assignment of errors to clearly and specifically
indicate the very errors complained of, and to separately in-
dicate instructions objected to, an assignment that the court
erred in giving of its own motion the instructions contained
in certain specified paragraphs of its charge to the jury was
too general to present any question for consideration.

*Appeal from Monona District Court.*—HON. F. R. GAYNOR, Judge.

SATURDAY, APRIL 12, 1902.

ACTION at law to recover damages on account of alleged sales of intoxicating liquors to palintiff's husband. There was a verdict and judgment for plaintiff, and defendants appeal.—*Affirmed.*

*Bevington & Kennedy, Sullivan & Griffin,* and *Wil. bur Owen* for appellants.

*A. & J. Van Wagenan* for appellee.

WEAVER, J.—The plaintiff alleges that she is without property or means of support other than the labor and earnings of her husband, who is a tailor by trade, residing in Sioux City, Iowa; that the defendants, Manderschied and Arnesdorf, each maintains a liquor saloon in said city; that on the 6th day of February, 1899, each of the defendants sold and gave to her husband intoxicating liquors, causing him to become intoxicated; that while so intoxicated, and by reason thereof, the defendant, in attempting to reach his home, became lost, and was so badly frozen that his hands and a part of his feet had to suffer amputation; that by reason of such injury he is wholly disabled, and has no means of earning a livelihood for himself or family: and she demands damages in the sum of $10,000. The defendants severally deny the allegations of the petition. This action was begun in the district court of Woodbury county, and two successive trials in that court resulted in a disagreement of the jury. After the second trial, plaintiff filed a motion for a change of venue, alleging as grounds thereof that the prejudice of the people of Woodbury county against prosecutions of that kind was such, and the influence of the defendants and their

attorneys was so great, that she could not obtain a fair trial in said county. Like reasons were also assigned against Plymouth county. This application was supported by several affidavits in due form, and defendants'. resistance thereto was supported by a large number of counter affidavits. The motion was sustained by the court, April 19, 1900, and the cause ordered sent to the district court of Monona county for trial. On the 20th day of April, 1900, the clerk of the district court of Woodbury county transmitted to the clerk of the district court of Monona county the pleadings in the case, and a transcript of what was certified to be a true and complete copy or transcript of all the orders of the court in said cause; and on the 24th day of April, 1900, said clerk transmitted an amended transcript, certifying to it as containing the motion for change of venue, and objections made thereto, and the affidavits filed in support and resistance. These papers were duly received by the clerk of Monona county, but were not marked "Filed" by him until August 21, 1900. Upon the cause being brought to trial in Monona county, the defendants objected to the jurisdiction of the court on the ground that the transcript from the clerk of Woodbury county was not complete and not properly certified; that a part of the transcript was not made or transmitted until April 24, 1900; that the court, in ordering the change of venue, failed to designate what costs should be paid by the applicant for the change, or make any order in regard to the costs; and that the costs were not in fact paid. These objections being overruled, the trial proceeded, resulting in a verdict and judgment for the plaintiff for $6,000. Only a part of the errors assigned by appellants have been argued in this court, and to those only will we refer in disposing of the appeal.

I. Appellants' first contention is that the district court erred in ordering the change of venue to Monona county. The granting or refusing of an application for

change of venue is a matter very largely within the discretion of the court to which the motion is addressed, and when a showing is made which is regular in form, and *prima facie* sufficient, the ruling of the trial court sustaining it is rarely, if ever, reversed upon appeal. It is impossible for this court, even upon the most complete record, to see the situation as clearly as it appeared to the trial court. That court had witnessed two successive trials to a jury without a verdict, and was in position to say, from its knowledge and observation, how much weight should be given to the allegations of the motion, and of the testimony in reference thereto upon either side. *Garret v. Bicklin*, 78 Iowa, 119. Such a question is not to be disposed of by a mere comparative count of affidavits. It is unnecessary for us to go into the details which counsel dwell upon in argument. The district court acted within its discretion, and the assignment of error thereon cannot be sustained.

II. It is further urged with much earnestness that appellants' objections to the jurisdiction of the district court of Monona county should have been sustained. The statute provides that when an order for change of venue has been granted, it must be perfected by noon of the second day thereafter, and that when perfected the clerk must forthwith transmit to the clerk of the court to which the cause is sent a transcript of the record and proceedings, with all the original papers; having first made out and filed in his office authenticated copies thereof. Code, section 3500. It is evident from this provision that the making and transmission of the transcript is not the act, or one of the acts, which is necessary to "perfect" a change of venue; for by the express words of the statute the clerk is required to make and transmit such transcript only when the change has been perfected. The fact, therefore, that the clerk's first transcript on the day following the order for a change was

not as complete as it should have been, and required subsequent amendment, cannot, we think, affect the jurisdiction of the court. It is true, the statute says this duty of the clerk shall be performed "forthwith," but that can mean no more than that he must act promptly and with reasonable dispatch. The work he is required to do is of such nature that it cannot be done instantly, and it may easily occur that the record is entirely too voluminous to be transcribed by noon of the second day; and, if made and transmitted within a reasonable time thereafter, no rights are lost. And if, as claimed, the clerk's first transcript was not complete in every respect, or if the certificate thereto was not entirely formal, we do not regard such defect a jurisdictional matter, and see no reason why, under such circumstances, if the defect be found material, the court may not require the proper amendment to be made. The failure of the clerk of Monona county to make a written minute or entry of the filing of the transcript at the date of its receipt is also immaterial. The fact that the papers were transmitted by the clerk of Woodbury county on the several dates named is admitted, and their receipt by the clerk of Monona county in due course of mail or express is not denied. Everything was done in that respect which ought to have been done, except the making of the usual minute or entry of the filing. When the papers were received into the official custody of the clerk, and the case was entered upon the docket of that court, they were to all intents and purposes filed, and the omission of the clerk to properly note such filing could thereafter be cured by order of the court for the making of the entry as of the proper date.

III. In further objections to the jurisdiction of the district court of Monona county, it is claimed that the change of venue was never perfected, or was waived, by the failure of the appellee to pay the costs before noon of the second day after the date of the order granting the

change. The statute relied upon provides that all costs "caused by the change, or that are rendered useless by reason thereof, shall be paid by the applicant, and the court or judge, at the time of making the order, shall designate in general terms such costs, and no change shall be held perfected until the same are paid." Code, section 3511. In the present instance the court did not at the time of making the order, nor at any time thereafter, designate what costs, if any, should be paid. On the day after the change was ordered, appellee's counsel applied to the clerk to ascertain the costs made by the change, with the purpose of paying the same; and the clerk informed him the costs were not, or could not yet be, computed. On one or two subsequent occasions, and before the amended transcript was completed, counsel again called upon the clerk for the purpose of paying the costs, but each time was told the amount had not yet been ascertained; and on the last occasion he signed and left with the clerk his check for a blank amount, authorizing the clerk to fill in the amount whenever the costs were computed. We think the point made by appellants concerning these costs is not well taken. The court having failed to designate or point out the costs to be paid, as the statute directs, we must assume that, in its judgment, there were none which the appellee should be required to pay. Moreover, there is no evidence that there were any costs which were properly chargeable to the appellee, unless it be the clerk's fees for making and transmitting the transcript; and these counsel sought to pay in due time, and was prevented from so doing by the inability of the clerk himself to tax or state the amount of fees to which he was entitled. It is further shown that counsel were diligent in repeating their offers to pay, and that payment was in fact made as soon as the clerk would accept it.

IV. Upon the trial of the cause, plaintiff's husband testified as a witness in her behalf, and was permitted to ex-

hibit his maimed hands and feet to the jury. Photographs of the husband, showing his crippled condition, were also admitted in evidence. All this testimony was admitted over appellants' objection, and error is assigned thereon. We think there can be no question as to the propriety of permitting the exhibition of the husband's physical condition to the jury. Plaintiff was suing for injury to her means of support, and the extent of that injury depended upon the extent to which the husband's ability to labor and earn money had been impaired. There was no way in which the exact nature and extent of his disability could be made so clear to the apprehension of the jurors as by placing him before them, and letting them personally see and examine him. It will be conceded that, in ordinary actions for damages by the person who has sustained a bodily injury, this kind of evidence is admitted, as tending to show the extent of the resulting pain and suffering; and, of course, plaintiff in this case could not be allowed to recover for the pain and suffering of her husband. But this is not the only, nor, indeed, the principal, ground for allowing such testimony. The most common justification for its admission is the one which we have already suggested; that is, it shows the "extent of the disability" which is alleged to have been occasioned by the defendants' neglect or wrongful act. Thompson, Trials, section 858; *Schroeder v. Railroad Co.*, 47 Iowa, 375; *Hall v. Incorporated Town of Manson*, 99 Iowa, 698; *Car Co. v. Parker*, 100 Ind. 181; *City of Lanark v. Dougherty*, 153 Ill. 163 (38 N. E. Rep. 892; *Railroad Co. v. Botsford*, 141 U. S. 250 (11 Sup. Ct. Rep. 1000, 35 L. Ed. 734). And the extent of the disability of the injured man in this instance was, as we have seen, a matter of importance, upon which the jury had a right to be informed. Nor is the evidence objectionable because it may tend to excite the sympathies of the jury. *Mulhado v. Railroad Co.*, 30 N. Y. 370. The court there says: "Such exhibition certainly tended to make the des-

cription of the injury more intelligible, and it cannot be supposed to have had any undue influence upon the feelings or sympathies of the jury. As well might it be said that a man who had lost an arm or leg by a similar injury should not be permitted to appear before a jury to testify in relation to it, lest their feelings might be influenced." In *Hays v. Railway Co.*, 70 Tex. 602 (8 S. W. Rep. 491, 8 Am. St. Rep 624), it is said: "Physical facts are always admissible, and, when the object itself can be brought into court and exhibited, it is more satisfactory than a description of it by witnesses who have inspected it out of court." The force of this observation is apparent in the present case. While the husband's hands and feet were all maimed, neither member had suffered entire amputation; and it was more important that the jury should be able to see for themselves whether the disability thus occasioned was entire or partial, and, if partial, the extent to which he was thereby incapacitated for manual labor. This could be seen far better than the most expert witnesses could describe it. It is inevitable, perhaps, that evidence of this nature should have a tendency to excite human sympathies, but these collateral and incidental effects do not render improper evidence which is otherwise admissible. Concerning the introduction of the photographs, there is more room for doubt. Having the injured man present in person before the jury, it is difficult to understand to what end or purpose this evidence was offered. It could show nothing not already made clearly apparent to the eyes and understanding of the jurors, and, if as the appellants claim it was intended merely to arouse indignation and sympathy, we cannot conceive it possible that these dead and lifeless pictures could add in the least to the effect of the exhibition of the mutilated human form over which this controversy was waged. In view of this evident absence of any prejudicial effect from the evidence objected to, we are disposed to say that, if

the ruling was erroneous, it is not of such material importance .as will justify a reversal of the judgment.

V. Objection is made, also, to the instructions of the court upon the measure of plaintiff's damges. The only assignment of error which apellants make in reference to the instructions is in the following language: "The court erred in giving of its own motion the instructions contained in paragraphs 6 to 14, both inclusive, of its charge to the jury, to the giving of . each and every one of which instructions the defendants then and there duly excepted." Under the statute and the repeated decisions of this court the assignment is entirely too general, and presents no question for our consideration. Code, section 4136; *Peck v. Hendershott*, 14 Iowa, 40; *Blair v. Madison County*, 81 Iowa, 313; *Wicke v. Insurance Co.*, 90 Iowa, 4; *Koenigs v. Railroad Co.*, 98 Iowa, 569.

VI. Before the trial was begun in the court below, the appellant Manderschied moved that the names of other defendants be stricken from the petition, and that he have a separate trial. This motion was refused, and upon that ruling he assigns error. He also alleges that the evidence does not warrant a verdict against him. The damages claimed by plaintiff are the result of a particular intoxication, to which it is charged both defendants contributed, and not of a geperal besotted condition. Under such circumstances, it is well settled that a joint action will lie, although the defendants were conducting separate places of business, and do not act in concert. *Hitchner v. Ehlers*, 44, Iowa, 40. There was therefore no error in overruling the appellants' motion.

The evidence was conflicting, and, while the preponderance in number of witnesses was with the appellants, there was sufficient testimony, if credited by the jury, to sustain its finding. Under such circumstances, we cannot interfere with the verdict.

The judgment of the district court is AFFIRMED.